### 27476. CALDWELL et al. v. STANDARD NATIONAL INSURANCE COMPANY et al.

UNDERCOFLER, Justice. Standard National Insurance Company is a Georgia corporation wholly owned by Phoenix Insurance Company of Hartford, which is wholly owned by Travelers Corporation of Hartford, Connecticut. Travelers Indemnity Company is another wholly owned subsidiary of Travelers Corporation. These four companies are frequently referred to as the "Travelers Group."

Standard National sells "group" automobile insurance, notably to Lockheed Corporation employees at Marietta, Georgia, but to other groups as well. This mass merchandizing utilizes group solicitation, payroll deduction, electronic processing, and an agency commission of 6% rather than the usual 20%, all of which lowers the "overhead" cost of the insurance. It permits Standard National to sell its policies to members of the "group" at a proportionately reduced premium as compared with policies sold on an individual basis. The savings are substantial.

The record shows that Standard National's group policy holders pay 16.6% less for automobile liability coverage and 22.7% less for automobile physical damage coverage

than Travelers Indemnity's individual holders of similar policies.

Essentially this litigation arose when certain "independent insurance agents" complained to the Georgia Insurance Commissioner that Standard National's reduced premiums to "employee groups" violated the Georgia Insurance Code. The Insurance Commissioner ruled in favor of the independent agents. The four members of the Travelers Group filed a complaint in Fulton Superior Court. This appeal is from a judgment adverse to the independent insurance agents and the Georgia Insurance Commissioner.

The appellants complain that the "lower premiums charged by Standard National to Lockheed employees for substantially the same type of automobile insurance sold by Travelers Indemnity Company to the public generally in Georgia at higher rates constituted a violation of [*Code Ann.*] § 56-713 (4) and § 56-507 of the Georgia Insurance Code because of the close corporate relationship of companies, which are under common ownership, control and management."

Appellants contend that, "in such circumstances, different treatment of identical insurance risks founded solely on the distinction that Standard National wrote individual policies only to persons employed by a single employer, on a payroll deduction plan, whereas Travelers Indemnity Company did not so restrict its marketing, constituted the granting of a preference placed upon employment in a particular group contrary to the 'fictitious group' statute (*Code Ann.* § 56-713 (4)) and unfair discrimination between policyholders of what is essentially one company."

The appellants argue that any saving afforded by mass merchandising should benefit all of the policyholders of a company and not just the group policyholders.

As stated by appellants, the issue is "very narrow and precise," that is, "whether or not *Code Ann.* §§ 56-713 (4) and 56-507 prohibit the mass marketing program of Standard National."

*Code Ann.* § 56-713 (4) provides: "Fictitious groups.—(a) No insurer shall make, offer to make, or permit any preference or distinction in property, marine, casualty or surety insurance as to form of policy, certificate, premium, rate, or conditions of insurance, based upon membership, nonmembership, or employment of any person or persons by or in any particular group, association, corporation or organization, and shall not make the foregoing preference or distinction available in any event based upon any fictitious grouping of persons as defined in this Title, such fictitious grouping being hereby defined and declared to be any grouping by way of membership, nonmembership, license, franchise, employment contract, agreement or any other method or means resulting in unfair discrimination." Ga. L. 1960, pp. 289, 405.

*Code Ann.* § 56-507 provides: "Standards applicable to rates.—The following standards shall apply to the making and use of rates pertaining to all classes of insurance to which the provisions of this Chapter are applicable: (a) Rates shall not be excessive or inadequate, as herein defined, nor shall they be unfairly discriminatory. No rate shall be held to be excessive unless (1) such rate is unreasonably high for the insurance provided and (2) a reasonable degree of competition does not exist in the area with respect to the classification to which such rate is applicable. No rate shall be held inadequate unless (1) it is unreasonably low for the insurance provided, and (2) continued use of it would endanger solvency of the insurer, or unless (3) the use of such rate by the insurer using same has, or will, if continued, tend to destroy competition or create a monopoly. (b) Consideration shall be given, to the extent applicable, to past and prospective loss experience within and outside this State, to conflagration and catastrophe hazards, to a reasonable margin for underwriting profit and contingencies, to past and prospective expenses both Country-wide and those specially applicable to this State, and to all other factors, including judgment factors, deemed relevant within and out-

side this State; and in the case of fire insurance rates, consideration may be given to the experience of the fire insurance business during the most recent five-year period for which such experience is available. Consideration may also be given in the making and use of rates to dividends, savings or unabsorbed premium deposits allowed or returned by insurers to their policyholders, members or subscribers. (c) The systems of expense provisions included in the rates for use by any insurer or group of insurers may differ from those of other insurers or groups of insurers to reflect the operating methods of any such insurer or group with respect to any kind of insurance, or with respect to any subdivision or combination thereof. (d) Risks may be grouped by classifications for the establishment of rates and minimum premiums. Classification rates may be modified to produce rates for individual risks in accordance with rating plans which establish standards for measuring variations in hazards or expense provisions, or both. Such standards may measure any difference among risks that have a probable effect upon losses or expenses. Classifications or modifications of classifications or risks may be established based upon size, expense, management, individual experience, location or dispersion of hazard, or any other reasonable considerations. Such classifications and modifications shall apply to all risks under the same or substantially the same circumstances or conditions. (e) Nothing contained in this section or elsewhere in this Chapter shall be construed to repeal or modify the provisions of Chapter 56-7 of the Georgia Insurance Code relating to unfair trade practices, and any rate, rating classification, rating plan or schedule, or variation thereof, established in violation of said Chapter, shall, in addition to the consequences stated in said Chapter 56-7 or elsewhere, be deemed violative of this section." Ga. L. 1967, pp. 684, 690. *Held:*

1. In our opinion *Code Ann.* § 56-713 (4) relating to "Fictitious groups," insofar as affects the issue here, prohibits

any preference in rate based upon employment in a particular corporation. However, it does not prohibit a reduced rate to such a group based upon a reduced expense factor. This is not a preference. It is a classification which is permitted under *Code Ann.* § 56-507 (d) which provides, "Classifications or modifications of classifications of risks may be established based upon . . . expense . . . or any other reasonable considerations."

*Code Ann.* § 56-713 (4) prohibits arbitrary group rates which are offered only as a contrivance to attract subscribers. *Code Ann.* § 56-507 authorizes classifications of risks based upon a reduced expense factor.

Upon close analysis, the evil against which § 56-713 (4) (a) is directed is the granting of advantage in insurance rates to persons, or groups of persons, based upon factors other than legitimate rate-making considerations.

2. The other enumerations of error need not be decided.

*Judgment affirmed. All the Justices concur.*

ARGUED OCTOBER 11, 1972—DECIDED NOVEMBER 30, 1972.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Robert J. Castellani, Assistant Attorney General, Heyman & Sizemore, W. Dan Greer,* for appellants.

*Gambrell, Russell, Killorin, Wade & Forbes, Edward W. Killorin, E. Smythe Gambrell, Richard L. Stumm, James H. Bratton, Jr., Hugh M. Dorsey, Jr., William W. Fisher, Jr.,* for appellees.